Hear ye, hear ye, this Honorable Appellate Court for the Second Judicial District is now in session. The Honorable Robert J. McLaren presiding. Please be seated. Your Honor, the final case on the docket this morning was 2-23-0239, Richard Sarmont, plaintiff's attorney, v. Joyce DeWitt and his friends circled me as telling me to approach him on the issue. I said once, Appellate. Arguing on behalf of the Appellate, Mr. Richard Grossman. Arguing on behalf of the Appellatee, Mr. William B. Whitehall. Is it Grossman or Grossman? Grossman. Mr. Grossman, you may proceed. Thank you. Good morning, Your Honors. My name, as you know, is Richard Grossman and I represent the plaintiff, Mr. Richard Sarmont. Today's case presents two questions. The first is what the meaning of the term special damages is in the context of a defamation case. And the second regards whether the special damages requirement that's applied in the defamation cases is applicable to the false light cases. Is the issue of special damages an issue of fact, question of law, or a mixed question of fact and law? Well, I would say that it's probably a question of a mixed question because you have to say what is the law, first of all. You're interpreting the law insofar as a particular scenario of facts. That's correct. Like probable cause, for instance. So when you start talking about special damages, you're talking about something other than just damages. Correct. You're talking about something other than compensatory or punitive. So you're talking about a category. So then the question is do the damages or the costs, the injury involved, fit into this little category? That's correct. Next question along with that. Okay. Why is it special to the extent that it isn't something that would be otherwise recoverable? Well, the cases do not fix a specific definition of special damages. And the cases I've seen, and I think I've read most of the cases now, basically say it's monetary loss that's connected as a result of a defamation. That's what I read, and I would argue that in this case, that's what happened. Here, I would venture this. I would venture that if any one of you had been accused of sending a racist email that you knew that you did not send, the first thing that you would do is try to find out who, in fact, sent that email. And not because you were going to file a lawsuit, although you may want to file a lawsuit. But you would be inability to establish the fact that someone else did it. I.e., there are many defendants in murder cases who know they're innocent, but they don't know who did it. And so is the easiest path to prove they didn't do it without having to identify the perp? Or do they have to identify the perp in order to establish their innocence? In a criminal case, you can point to someone else, and you can raise that as a defense, but you don't have to. You don't have to do anything. You can sit and say, I didn't do it, and let the state prove it. So we're basically proving you didn't do it or proving someone else did it. I think your point is you don't have to prove it. You don't have to do anything. But what's the better defense, I guess? That's right. You just say, I didn't do it, and let the state prove it. But this is different. In this case, what's at issue is your reputation. The murderer, on the one hand, certainly that impugns your reputation. But the issue before the court is not whether your reputation is at stake. The issue before the court is whether you murdered somebody. But here, you're really trying to vindicate yourself. Let me give you an example of the ambiguity of your argument. All right. The e-mail was sent by someone we don't know who. Correct. The URL happens to be the public library. So who on that computer in the public library sent that? Was it your client or was it some perpetrator who wanted to incriminate, so to speak, your client? So you may not, if there is a situation at hand, unless there are video cameras, security cameras taking pictures, and it is shown that Joe Blow was sitting at that computer when supposedly that e-mail was sent from that URL. So unless you have the serendipitous coincidence that you can establish who did it, at least if there was a security camera and it showed that the person was nondescript and was wearing a surgical mask and so on and so forth, but the person was about 20 pounds less than your client, then maybe it would be an easy way to say it's not your client, but I don't know who it is. But the point is that if you're going to have some witness testify as to what is happening, is this person going to be qualified as an expert or are they going to be a layman? Now, it's hard for me to imagine that this person who's going to testify as to how they found this out was someone who was a layman. No, in fact, Your Honor, we hired, that is my client hired a forensic computer specialist. And my point is, is if that person testified, would they testify as to what is the most reasonable and efficient so that you're mitigating your damages, manner, protocol, or whatever, as to determine whether or not your client did or didn't do it, and if he could identify who did it or whatever, whether or not it would be reasonably easy or easily facilitated? I don't, if you're talking about how much is enough. What I'm getting at, sir, is what stage in the proceedings are we at so that we're supposed to make a determination as to whether or not this mixed question of law and fact is not or is manifestly erroneous? Well, here, the defendant argued that the Indiana case, in which a somewhat similar situation occurred, analogizes it to either attorney's fees or litigation expenses. And what I'm saying is, in that case, they were already involved in litigation. Here, my client did this well before there was any lawsuit filed. So all I'm saying is that if you were charged with sending a racist email that you know you didn't send, the first thing you would do is to hire somebody to find out who did it, whether that person's a layperson who just happens to be your, you know, maybe your cousin who's really good at stuff, or whether it's a professional that's a computer forensic specialist. I don't think it makes a difference. What you want to establish is that here's what happened to me. Somebody said something false about me, and I had to spend money to find out that it's not true. Kind of like a credit rating that was wrongfully assessed, and it cost you money to straighten it out? That may be, yes, I think that that's an appropriate analogy. And I offered in my brief, I said, it's like, if you've got a broken arm, you would go to the doctor. You worry later about who did what, and you're going to sue them. You try to vindicate what the problem is. I'm not saying I'm trying to take you down a path, be it primrose or otherwise, but the term that I'm thinking of is justiciable. I.D., is this right? Was it right when the trial court rendered its decision dismissing the case and finding what the special damage is qualified as, whether it was in the right or the wrong category? Was that too early to determine whether or not, under the facts and circumstances of the case, whether a reason, assuming this was tried in front of a jury, would a juror believe that this is reasonable damages to do this? Or is it so manifest that it isn't? I'm aware, and the defendants have averted to the doctrine, that you're entitled to, I guess, uphold a decision below on anything that's present in the record. I don't know if the reverse is true, and if you conclude that this is something that the judge shouldn't have decided is a matter of law, then I guess you could send it back, although I didn't argue that below. I will say that. I didn't argue that this was too early in the proceedings. Well, then, the facts in the case that were cited in support of dismissal, anything close to the facts in this case? Yes. Yes. I thought you told me that the attorney's fees were attorney's fees, and they were incurred after the litigation or before? In the case that you cited. In the case that I cited. That you told us just now that the appellate lawyer. Oh, in the Indiana case? In the Indiana case, those people were actually, they actually, they filed lawsuit to find, they actually filed a piece of litigation to employ the subpoena power so that they could find out who it was that they had to sue. Right? Here, my client comes to me and says, this thing happened to me, and I said, you've got to find out who did this in the first place. Not necessarily, I mean, I'm an attorney. Yes, I make a living litigating or trying to settle controversies, but what I recommended to him was that he find out who in fact it is so that perhaps you could go to the church where everything was published and say, look, I didn't do this. Someone else did. And all I'm saying is I believe that those expenses are sufficient under what I regard as a very ambiguous or kind of vague description of what special damages mean. And the appellate court's decisions background all say we don't know it. You know, it's whatever, kind of what they said about pornography. You know, we know when we see it, and that's how they get to the decisions in cases. Most of the cases that I've seen in Illinois anyway find that injuries to reputation, speculative damages about, well, this is what caused me the loss, that's not enough. What you really have to show, the cases that I've read, is that you lost something. In most of the cases that got confirmed on the ground that, yes, they're sufficient to show special damages, somebody wouldn't do business with you as a result of the monetary loss. Well, but the key for me is that that's attributable to the alleged, the harm that comes from the alleged defamation as opposed to, you know, that I think the first thing somebody's going to do is go see a lawyer if something like this happens. And if the lawyer says get an investigator, and that's a special damage, then the attorney's fee should likewise be a special damage. But none of the cases are anywhere close to that. It's always, I lost a, it always has to be very specific, too. I lost a specific client. I lost a specific job. I lost a specific job opportunity. This is nothing like that. This is in defense of oneself and arguably in pursuit or anticipation of litigation. It doesn't seem like a special damage to me. I would offer this. I don't believe that it's at all provable, I suppose I would say, or even necessarily sequentially true logically that you, if you talk to an attorney, that you're automatically in the litigation process. You could, I think, again, I offer the, if you were charged with sending a racist email. But would it make it any more recoverable, or would you argue in that case then, if I had the pure mind that I only wanted to know as a result of the wrong done me what my rights were, what should I do, that that's recoverable? I mean, logically that follows from your argument. Only until the point when perhaps litigation is being actively pursued, then in that case those sorts of fees would not be allowed. Again, I'm saying that there's, at least for me, a disconnection between going to see a lawyer, having the lawyer say something like, you should find out who actually did this. Because, frankly, if we knew who did it, we wouldn't be standing here. There would be no lawsuit filed. Because what would happen is you would say, hey, it wasn't me, it was this guy. And then the harm is solved. Because you can prove that you didn't do what you were accused of doing. That would, to me, that seems like you've now vindicated your reputation. I would like to... You're saying that that's what your client wanted, as opposed to claiming that he's realized monetary damages and he wants to be reimbursed or paid for the monetary losses that he, quote-unquote, experienced? I don't think that... If you haven't thought about it, you can answer the question. Go ahead. I don't think that it's necessarily the case that he wanted to be... That the money he spent was so that he could be reimbursed. The money he spent was to prove that he was not the one that sent this email. And he doesn't have to do that in a courtroom. So I didn't get a chance to address the other portion, but maybe I can do that on rebuttal. I don't know if that's appropriate. I have a question. All these special damages talk about monetary loss. Loss of business, loss of a client, loss of some pecuniary gain that you would have otherwise had. But with respect to your client, he's 84 years old and he's retired. What client could he possibly lose? What business could he lose? And if that's the scenario, isn't this patently unfair to someone of his age? Well, first of all, he's 86. But I didn't argue. We never made the argument below that my client lost business. Right. But it seems that that is the thrust of these special damages, that there is something of articulable monetary pecuniary loss. I agree. And so my question is, isn't that setting up an unfairness to someone who's 86, I stand corrected, who no longer has a business or is in a position to lose a pecuniary interest, if we assume my reputation, if you will, has no pecuniary interest? And I would agree with you, but I would also say there are other interests that can be vindicated. I know that there's after the court decided Times v. New York, or I mean Gertz, in Times they upheld you could sue for some other interest like, you know, anxiety or whatever. And they said you could do that even though they hadn't fled a monetary loss. I would think that you could hold the same. In other words, I don't read the case as saying that you have to have a business and lose clients. I read the case as saying that you have to spend some money as a result of this person saying a bad thing about you. Okay? So thank you. You'll have an opportunity to make rebuttals, sir. Thank you. Okay. Mr. Weiler, you may proceed. Counsel, may it please the Court, your honor? I'm Bill Weiler and I represent Joyce DeWitt and Prairie Circle Unitarian Universalist Congregation in this case. There are two issues this counsel may have raised here. The first one is whether or not the court should affirm the trial court's dismissal of count one for defamation for fraud because the plaintiff didn't plead special damages. And then the second one is whether or not the special damages are required in a false late claim, which is in count two of the plaintiff's complaint. With respect to the first issue, and I want to make sure that everything is clear, is the Supreme Court has made it very clear that in a defamation per quad claim, as opposed to defamation per se, you have to have special damages. If there are no special damages, then you can't proceed with a per quad defamation claim. There's no dispute in this case that this is a per quad defamation claim. There's no allegation of anything per se that's never been argued. So plaintiff admits that he has to have evidence of special damages. He has to plead evidence of special damages in order to proceed. We filed a motion to dismiss the defamation per quad claim because there were no allegations of special damages. There were just these generalized things that had been argued. Is there a paradigm or a limited definition for special damages? Special meaning if the Supreme Court hasn't put its imprimatur on the nature and extent of the damages, then they aren't special damages and never will be. No, that hasn't. I'm not aware of any case that has said that. Well, considering the way our lives have changed to the extent that we went from party lines to cell phones that are hotspots and you can, quote, unquote, turn them into a terminal, there has been differences in, for instance, the publication of this was done by clicking send, not by writing or copying 30 letters and mailing 30 letters with 30 stamps. So times change. And it would seem that the Supreme Court in its, the aspect of its determination of what is public policy relative to what special damages might be, it would seem that it's somewhat fluid. Sure. And, Judge, I think that that, Justice McLaren, I think that that gets into a little bit in the second issue here, because what are special damages and why do you have to have it? And one of the reasons that they have it especially, or not especially, but in per quad claims as opposed to per se claims, with per se defamation claims, it's presumed that there's been damages. And so you don't have to plead special damages. They're presumed. With a per quad claim, the defamatory nature is not clear out of space. You don't know what the defamation is. In fact, look in this case, the defamatory statement was, stop it, Rick. We don't spend $1,000 for speakers. That's the defamatory statement. Now, anyone looking at that can say, well, why is that defamatory? You don't know. You have to look at extrinsic evidence. That's why it is a per quad defamatory, allegedly defamatory statement. Or more precisely, why it isn't per se. Exactly. Because per quad is those things which aren't per se. Correct. Yeah, there's the five categories of per se. There's them and not them. Correct. Or them and everybody but them. Yes. And everybody but them, especially in a case like this, you have to look at other things in order to determine why this is defamatory. And so what the courts have said is, we're not just going to say that someone can proceed with a I was humiliated or I was ashamed or that hurt my reputation without something more. They have additional restrictions that they place on that. And one of those restrictions is special damages. Now, the special damages, there's not a precise definition, but all the courts indicate that this is a monetary thing. This has to be something a hard and fast. You can't just say, well, I lost business. And the courts have said that is not enough. Well, we're fact leading state. Correct. The point is that special damages includes loss of business, but you need to specify exactly. Exactly. If you said, I had this client, XYZ Insurance Company, they read this article about me, and now they're not sending me any cases. And I used to do $300,000 worth of business from them. Now I don't. That would be special damages. Just Jorgensen had said that, well, the plaintiff is elderly. How can he have special damages? One of the things he could say is, as a result of this, I had such severe anxiety that I had to go to the doctor, and I spent money going to the doctor, and now I have to take these anti-anxiety pills. That's special damages because, as a result of the alleged defamatory statement, he had to spend money. Just a small one. You pointed out, well, these aren't things that hiring the investigator is something he chose to do. It wasn't something that he didn't lose his job because of this. He didn't lose business because of this. He didn't get anxiety because of this. He chose to go hire an investigator. In any case, you don't get to recover damages in any defamation case, I should say. You don't get to recover damages for your experts or people that you hire. Those aren't special damages. As the trial court held here and as the court in Mince held and the court in Carbon held, those are litigation expenses. Wait a second. How is this a litigation expense? Just like hiring an expert in any other case. He doesn't need to prove in his case. He's got to. Hold on. He didn't need either. Okay. May I move closer to the mic? He doesn't need to prove who sent that email. He only has to prove he didn't. Correct. He has to prove the source. Should we parse out these costs that were incurred to say, this is how much was incurred to show I didn't do it. This is how much was incurred to show who might have done it. And that is special damages. And the whole reason for hiring an investigator is so he can present that evidence at trial. He doesn't need to. Whether he does or doesn't isn't something that's – he doesn't have to prove that. So how is it a litigation expense? If I hire 100 experts but only count one, I mean, you're saying everything he does that has anything to do with this defamation claim is inherently litigation costs. But if it's not related to what he has to prove, I don't see how it's litigation expense. It's something that he chose to do. He didn't have to go hire an investigator. He has to clear his reputation. He doesn't have to clear his reputation. He can file a lawsuit and he can clear his reputation that way. In fact, he went to an attorney and his attorney said, in order to prove our claim, you need to go hire an investigator. That's what the record said, what counsel said on the record, is that you have to – I told him you need to go hire an investigator so we can prove that you didn't send this. But we don't have to prove that. That is not an element of his claim. The element of the – Only has to show he didn't send it. And how do you set – how do you prove that you didn't send it without – Yeah, get an expert. But if the expert also does all this other work for me because of that defamation, I think that should be separate. It's a different kind of cost incurred. But there is no allegation of any other work. The only work that was alleged to have done was to hire an investigator to prove that he didn't send this. And that doesn't – Which, how is that inconsistent with the statement that you so often, or at least I so often hear, where do I go to get my reputation back? And then one answer is your claim as to what he could do and then the plaintiff's claim as to what he did. And then we let the trier of fact decide between the two arguments or even between a third argument, which is guilty, innocent, or not proven. What is reasonable damages, be they special or a new form of damage, which is damages that are experienced or realized on the basis that what is supposed to be happening is that you are supposed to get your reputation back. And that is you get your reputation back and you can recover for things like outrage and embarrassment. You can get those things, but you first have to have some type of special damages, which has been interpreted as monetary, out-of-pocket expense as a result of the allegedly defamatory statement. Again, I hate to beat a dead horse here, but how is it not related to the defamatory statement? Do you think he would go out and just hire an expert to take a look at his computer just because? My response to that, Judge, is I think it's the exact same thing for hiring an attorney. Why would you go to hire an attorney otherwise? You hire an attorney in order to help prove your case, but attorney's fees aren't recoverable as special damages. He's not asking for attorney's fees. But they're in the same category, the attorney's fees and the expert witness fees and any other expenses, filing fees, deposition costs, things like that, are not recoverable as damages. They might be recoverable as costs, but those aren't damages in a case. In other words, you get a verdict form. It's not going to list investigator fees as a measure of damages. There's no case that said that. There's no form book. Plaintiff hasn't cited anything whatsoever other than his own argument. There's no case. There's no statute. There's no jury instruction. There's no form book. Nothing is ever said that if you hire an investigator, you get to do this. And the problem with saying that hiring an investigator is okay is it completely gets rid of the special damages aspect of a defamation pro quad case. So it makes it too easy to file? I'm sorry? It makes it too easy to file a claim? Yes, because anyone would be able to say, well, I'm going to get an investigator to investigate something to do with this defamation claim. And in a defamation claim, there's always things to investigate. And so all you would have to do is go investigate. You know, hire an investigator, and then essentially you're getting rid of the whole special damages requirement in a defamation pro quad case. Counsel, there seems to be a presumption that you're making as if it were a given fact. And that is, is that have you ever heard of Rumpel or the Bailey? Sure. So are you a solicitor or are you a barrister? I would say I'm a barrister. Okay. Have you ever done anything wherein people come to you and ask for legal advice? Yes. Then would you characterize that as being a solicitor? A barrister is one who passes the bar, and the bar was the railing that kept the public at bay and allowed the lawyers, the parties, and the judge to be on the other side. And so a solicitor was someone who could not pass that bar. So Mr. Grossman is suggesting to us that his client came and asked him for legal advice, i.e., he was a solicitor, and you are presuming him to be a barrister and that this consultation was for the purposes of litigation. He's already said it wasn't. It was for something other. The man was looking for legal advice, and usually legal advice starts out with finding out what the facts are and telling the client what is the best avenue, whether litigation is appropriate or whether or not there's something less severe, less costly, to resolve the problem. So I'm having difficulty with your argument to the extent that you're suggesting that litigation was, according to what we've been told, the presumptive and concluding or conclusive reason for the consultation. Well, because that's what he said on the record in the trial court, which is something we put in our state. He said that the client came to me and I said, well, you need to go get an investigator in order to prove the case. Okay. Is that a sine qua non? Is that a prefatory element or factor? Because what if the client comes back with empty hands? Is the barrister, solicitor going to tell him, well, we'll file a suit anyway and see what happens? I think it depends on the facts. I'm not sure. It depends on the water. You're right. If I could just make one brief statement on the second aspect, and this kind of ties together, and that is whether or not special damages were also required in false lay claims. As the Shaker Court made an extensive analysis of the case, and it said there are two reasons why you have special damages.  And the second was to protect the First Amendment interest in the dissemination of news. So there are two reasons why special damages are important that the court allows. And one of them, and I think the one important here, is to discourage trivial and extortionate claims as to there are no out-of-pocket damages here. There are no significant losses. There are many things that are not trivial that are not compensated. I know that's true. They're not compensable. I agree. I agree. But to say one of the reasons why you do have special damages is to kind of act as a clearinghouse or a road block or a triage station for these types of claims. And so it's your contention that the same policy should apply in a false lay claim that relies on or, excuse me, that is based on some sort of defamatory content. That's based on a defamatory per quote claim. If the false lay claim is based on a per se defamatory statement, it's not required. You don't need to plead special damages there. But when you have, like here, a false lay claim based on a defamatory per quote publication, then, yes, special damages are required as the CHAP report explained. Because otherwise the plaintiff would just do an end run around the special damages requirement and defamation per quote and pursue the false lay. Exactly. And, in fact, that's what in the restatement comment E that was cited in the brief. The restatement says exactly that. This is a new area of the law, and you can't get rid of restrictions. I'm paraphrasing. You can't get rid of restrictions that have been developed through the law of defamation just because the case law hasn't gotten there. And you have to look at these. Say that again. Well, because the false lay claim is a relatively new claim. It was only recognized in 1989 in Illinois. And so what the CHAP report says, and they quoted the restatement, which said when the false publicity is also defamatory so that either action can be maintained by the plaintiff, it is arguable that limitations of longstanding that have been found desirable for the action for defamation should not be successfully evaded by proceeding upon a different theory of later origin in the development of which the attention of the courts has not been directed to the limitations. In other words. There was a lot unknown, but they were posing this as a policy concern. Exactly, exactly. And even the Supreme Court in Loughborin when they, that was the first case in 1989 that said we're going to recognize this right, said we're not going to get into the specifics of it. We're going to leave that basically to the appellate courts to develop over time. How many cases like this have to come to the appellate court or the Supreme Court before it is deemed ripe for change? Because when I laughed or chortled, it was because it was a takeoff on who's going to build the cat. And that is when is the cat going to be built? Because if supposedly we're supposed to be reticent in this, how reticent should we be? How long must the time be in order to establish that we're reasonable in changing the law? It is a conundrum and an enigma that is so ironic. I had to respond with justice delayed is justice denied. And if we're denying it, how long do we deny it? You have created an interesting question for me to ponder for the next few days. Thank you. Thank you very much. Any other questions? No, sir. Thank you. Thank you. Mr. Grossman, you may proceed. If it pleases you, I'm going to talk about the second aspect. That is the second question presented by the case. Counsel in his briefing just now says that the Schaeffer case conducted an extensive analysis and came up with the requirement that you have to apply per-quad special damages in the per-quad false light case. I point out in my brief, and I really hope that you will take a look, and first of all, there is a case called, there are two cases, federal district court cases from Pennsylvania that the Schaeffer court relied on. Those two cases were specifically disapproved of by the Pennsylvania appellate court, which said, and I would offer you that case, and I hope you take a look at it, because it explains to you the derivation of these per-quad and per-se categories, which are a remnant from, I don't even know, medieval England, because the per-se was derived from a theory that by written slander. No, libel is written, slander is oral. Okay, I'm sorry, a written libel would be more permanent, and so the damages would be longer lasting. So there became this distinction between the written and the oral, and it carried over, and it just has no, the name of the case is Argus, A-R-G-I-S-S versus Roadway, and in there they explain why they've abandoned completely any requirement between per-se and per-quad. I will observe that I'm not asking you to do that, but I am, and the Supreme Court of Illinois decided a defamation case last week, and they reiterated that in a defamation per-quad case you need to prove special damages. I'm not asking you to go that far, but what I am asking you to do is take a look at all the other cases, the Argus case and all the other cases that I cite, where the courts allow a per-se, I'm sorry, a per-quad case to go forward, even if it doesn't have the proof of special damages. There's eight or nine states that have done this of the 30 or so, and maybe the question hasn't arisen in the other cases, but in any event, I wanted to make that point, that the extensive analysis that was undertaken in the Shaver case was flawed, and given the vanguard of those states that are willing to allow a per-quad false-like case to go forward, partially in reliance on the fact that there already is a tripartite formula for weighing these per-quad cases where you have to prove actual, that they're actually at fault, that derives from, you know, the Gertz and the Times cases, that there's already, and I think the court has said this in Lovgren, there's already a requirement that you prove fault. Actual malice. Actual malice. And so that those are sensitive enough, and the Shaver case arose, of course, in the setting of a media defendant, where the First Amendment is obviously going to, you know, prevail over all the other concerns, and that's just not the normal run of cases, and they said. But I think, and you're right, that is a distinction, and there are a number of cases that have media defendants that are reliant on Shaver, but there's also some that are non-media defendants. And, you know, I guess, I mean, I'm hearing you say there's no reason to make that policy consistent, that so if this court decides it's not going to try something new on defamation per quad and no longer require special damages, you are saying, I think, that we should no longer, we should not require special damages in a false light that is based on an allegedly defamatory conduct. I'm not urging that you abandon special damages in a defamation case. What I am saying is that in a false light per quad case, that that requirement, this court nor the Supreme Court of Illinois has ever said that you need to prove special damages, and there are reasons that are explained in the Argus case and the other cases why not. Any other questions? No, sir. Thank you. Thank you. The case will be taken under advisement and dispositions rendered in half time.